GORTON *v.* GORTON.

1. APPEAL AND ERROR—DIVORCE—SUFFICIENCY OF EVIDENCE—DE
NOVO REVIEW.
    Claim that testimony was insufficient to justify decree of divorce
    on ground of extreme cruelty requires *de novo* review of the
    testimony.

2. SAME—QUESTIONS REVIEWABLE—ADMISSIBILITY OF EVIDENCE.
    In the absence of any objection, raised before the trial judge
    or on appeal, Supreme Court assumes that defendant con-
    sented to admission of testimony as to occurrences subsequent
    to the filing of the bill of complaint, hence, matter of inad-
    missibility of such testimony on ground that no supplemental
    bill was filed is not passed upon.

3. DIVORCE—STATUTES—PUBLIC POLICY.
    The power to decree divorce is statutory and public policy is
    not a ground for exercising such power (3 Comp. Laws 1929,
    § 12728).

4. SAME—EXTREME CRUELTY—INABILITY TO LIVE TOGETHER.
    Mere inability to live together gives no right or reason, grounded
    · in public policy, to find a defendant in a suit for divorce
    guilty of extreme cruelty.

5. SAME—CUSTODY OF CHILD—EVIDENCE.
    Evidence in suit for divorce *held*, insufficient to justify Su-
    preme Court in decreeing *sua sponte* that plaintiff wife is
    not a fit person to have custody of three-year-old son of the
    parties, especially in view of fact that defendant does not
    question her right of custody (3 Comp. Laws 1929, § 12738,
    as amended by Act No. 134, Pub. Acts 1939).

6. SAME—CUSTODY OF CHILDREN—JURISDICTION AFTER DECREE.
    After decree of divorce the trial court still has jurisdiction to
    consider whether the best interests of the children will be sub-
    served, and whether the mother is a fit person to continue
    having the custody (3 Comp. Laws 1929, § 12739).

7. SAME—PRIMA FACIE CUSTODY OF YOUNG CHILDREN—STATUTES.
    While the welfare of a child is always the concern of the court in suits for divorce, the mother is, by statute, prima facie entitled to the custody of a three-year-old child (3 Comp. Laws 1929, § 12852).

8. APPEAL AND ERROR—QUESTIONS REVIEWABLE—DIVISION OF PROPERTY—DIVORCE.
    In the absence of any question on appeal in suit for divorce as to fairness of adjustment of property matters, the Supreme Court need not review the same.

9. DIVORCE—EXTREME CRUELTY—EVIDENCE.
    Record in wife's suit for divorce *held*, to contain ample testimony on which a decree of divorce might properly be granted her on ground of extreme and repeated cruelty.

10. SAME—APPEAL—FINDINGS OF TRIAL COURT.
    While the Supreme Court is not restricted by the findings of the circuit court, a divorce case on appeal being heard *de novo*, especial consideration is given to such findings, so largely based upon the credibility of the witnesses, and they will not be reversed unless the Supreme Court is convinced that it must have reached a different conclusion had it occupied the position of the lower court, under like circumstances.

Appeal from Superior Court of Grand Rapids; Taylor (Thaddeus B.), J. Submitted October 11, 1946. (Docket No. 73, Calendar No. 43,541.) Decided January 6, 1947.

Bill by Diane Gorton against Myrle Gorton for divorce on ground of extreme and repeated cruelty. Cross bill by defendant against plaintiff for divorce on ground of extreme and repeated cruelty. Decree for plaintiff. Defendant appeals. Affirmed.

*Joseph E. Arsulowicz,* for plaintiff.

*Allaben & Wiarda,* for defendant.

BOYLES, J. On May 6, 1946, plaintiff was granted an absolute divorce from the defendant in the su-

perior court of Grand Rapids on a finding that the defendant had been guilty of the several acts of extreme and repeated cruelty charged in her bill of complaint. On appeal the defendant raises only one question, and on that ground asks that the bill of complaint be dismissed. The sole ground for reversal, as stated in appellant's brief, is as follows:

"That the testimony was not sufficient to justify a decree in favor of the plaintiff, and that the trial court erred in its finding that while both parties had probably been at fault, defendant's misconduct had been the greater. The defendant husband seeks no other relief than that the decree be set aside and that a decree be entered in this Court dismissing the bill of complaint."

This requires a review of the testimony *de novo.* The parties were married on April 18, 1937, in the city of Grand Rapids. They lived together as husband and wife until November 9, 1945, at which time plaintiff filed her bill of complaint and obtained an injunction, which is not in the record. It does appear, however, that on December 14, 1945, on the hearing of a motion by the defendant to modify the injunction, an order was entered stating that "the injunction heretofore issued out of this Court on November 13, 1945 restraining the defendant from living at the home of the parties be and the same is hereby modified as follows," following which the order provides that the defendant might live in a separate back room in the home and use the adjoining bathroom, but was not to enter the rest of the home.

The case was contested, and testimony adduced from a considerable number of witnesses. It shows that the plaintiff is 35 years of age, and the defendant 48. They lived together in Grand Rapids for upwards of 8 years, during which time one child was

born, a boy now about 3 years of age. The decree awards custody of this child to the plaintiff subject to right of visitation and possession by the defendant at certain designated times, gives plaintiff the home property and the household furnishings, alimony for support of the child, and the defendant was decreed the rest of the personal property. Inasmuch as no appeal is taken questioning these provisions in the decree they do not require further, consideration.

In regard to her allegations of extreme and repeated cruelty plaintiff testified:

"*A.* Well, he was just always nervous and he just would come home and I never knew what he was angry about; lots of times out of a clear sky he would come in and just curse me up one side and down the other.

"He would call me a God damned son-of-a-bitch and some other nasty names too. That has been through all the way through our marriage more or less but it has been worse the last couple of years. Anywhere between 2 and 3 weeks he would have one of those attacks. They would occur every 2 or 3 weeks. Mr. Gorton doesn't drink all the time, but occasionally he gets quite saturated with liquor. It would be worse when he would be drinking. * * *

"The type of treatment I testified to before as to . swearing and things of that nature had been going on for some time, all through our marriage and more so in the last two years and particularly since about a year ago when I stopped giving him the money I had been earning in the shop."

Plaintiff was then allowed to testify at some length and without objection, to occurrences subsequent to the filing of her bill of complaint. In the absence of any objection raised before the trial judge or on this appeal, we assume that the defendant consented to its admission and need not pass upon the admissibil-

ity of such testimony on the ground that no supplemental bill was filed. Plaintiff thus testified at some length, in part as follows:

"Q. Since you folks have separated in November how has been the relations between you and Mr. Gorton?

"A. He has been very abusive, every time he comes to the house he has been very abusive and out of all the times, it just started the 9th of November, there has been just five times out of all these times he would come to the house and hasn't said anything and been decent, but the other times he just heaped abuse on me, then it upset me so and upset the youngster so he wasn't able to keep any food down for four days.

"Q. When was that?

"A. Last week, I mean week before last, because that is when I was up to Dr. Vyn.

"Q. Did Mr. Gorton ever strike you during the time between November and the present time?

"A. He pushed me in the yard and he would have struck me if the lady next door hadn't interfered.

"Q. When was that, that he pushed you?

"A. Around the 13th of December.

"Q. You say he pushed you?

"A. Yes, I had the youngster, I was carrying him in the house, he grabbed hold of the youngster with one hand and pushed me with the other so I fell, when I fell I fell right on top of the youngster.

"The youngster was black and blue around the temple and I had skinned my knee and tore a pair of hose and got all muddy; when he knocked me down he held his knees down on me and was pulling the youngster out of my arms.   *   *   *

"My health hasn't been very good. I haven't felt good for a long time. I have been going to Dr. Vyn an average of once a week now for liver shots. I am anaemic. I take medicine after every meal and besides get the liver shots, and he also has been

treating me with nerve medicine. The last three weeks I have been going to the doctor every week."

Plaintiff also testified—without objection—that she felt there was no chance of a reconciliation and that the only solution to her difficulty with her husband was divorce. However, that is not a ground for divorce. The Court has said:

"Power to decree a divorce is statutory.* Grounds for exercising such power are specifically stated in the statute. Public policy is not there given as a ground and cannot be so considered." *Vander Laan* v. *Vander Laan*, 228 Mich. 52, 53–54.

"That the parties may not live together again gives no right or reason, grounded in public policy, to find defendant guilty as charged and to fasten on him indefinitely the burden of alimony or allowances." *Bolthuis* v. *Bolthuis*, 233 Mich. 584, 587.

The major part of the record before us is taken up with testimony and exhibits concerning the financial status and property affairs of the parties, about which no question is now involved. Both were employed—plaintiff as the operator of a "beauty shop," and the defendant as a traveling salesman away from home except for week ends. Their testimony is convincing that neither one of them was very thoroughly domesticated. There was an abundance of testimony that the plaintiff was not a good housekeeper, or a very good caretaker for their infant child. However, the court awarded plaintiff the custody of the child,† and we do not find in this record sufficient evidence on which we should decree, *sua sponte,* that the plaintiff is not a fit person to

* See 3 Comp. Laws 1929, § 12728 (Stat. Ann. § 25.86).—RE-PORTER.

† See 3 Comp. Laws 1929, § 12738, as amended by Act No. 134, Pub. Acts 1939 (Comp. Laws Supp. 1940, § 12738, Stat. Ann. 1946 Cum. Supp. § 25.96).—REPORTER.

have the custody, especially in view of the fact that her right of custody is not questioned by the defendant. The lower court still has jurisdiction to consider whether the best interests of the child will be subserved, and whether the mother is a fit person to continue having the custody. 3 Comp. Laws 1929, § 12739 (Stat. Ann. § 25.97); *Riede* v. *Riede,* 300 Mich. 300. While the welfare of a child is always the concern of the court in these cases, the mother is, by statute, prima facie entitled to the custody of this child. 3 Comp. Laws 1929, § 12852 (Stat. Ann. § 25.311); *Smith* v. *Smith,* 252 Mich. 543.

The defendant denied most of the assertions of the plaintiff as to his misconduct, and testified to occasions when the plaintiff's conduct was far from promoting domestic felicity, to say the least. Much of the testimony was inconsequential—for example, cross-examining a witness for the defendant as to whether she chewed tobacco. The defendant's testimony mainly concerned property matters. In the absence of any question on this appeal as to the fairness of the provisions in the decree adjusting their property matters, we need not review the same. At least half of the printed record, covering at length the testimony concerning property matters, might well have been omitted. It does not bear on the only question before us, namely, whether the testimony is sufficient to justify a divorce in favor of the plaintiff.

The defendant testified that he had difficulty in getting the plaintiff to get out of bed mornings to take care of the infant. He admitted telling her to

" 'Get your God damn lazy — — out of bed' or I would kick her out, 'and take care of that baby.' So she stepped out of bed 'by Jesus Christ, I am getting sick and tired of this and I am going to do

something about it,' so out she goes, and when I said that she could get out of bed in the hurry.''

He testified that he had sworn at his wife on various occasions and that she had sworn at him, too, plenty of times. He said, ''The knowledge of swear words is not just one sided in our home.''

The trial judge heard the testimony with much patience and moderation. He afforded more credence to the testimony of the plaintiff and her witnesses. A careful review of the record is convincing that the court had ample testimony on which a decree of divorce might properly be granted to the plaintiff on the grounds of extreme and repeated cruelty.

We are led to our conclusion in the present case by the rule often stated here, and last expressed by Mr. Justice BUSHNELL in *Kolberg* v. *Kolberg,* 312 Mich. 42, as follows (p. 46):

''While we are not restricted by the findings of the circuit court, a divorce case on appeal being heard *de novo,* especial consideration is given to such findings, so largely based upon the credibility of the witnesses, and the reviewing Court ought not to reverse the determination of the trial court in such a case, unless convinced that it must have reached a different conclusion had it occupied the position of the lower court, under like circumstances.''

Affirmed, with costs to appellee.

CARR, C. J., and BUTZEL, BUSHNELL, SHARPE, REID, NORTH, and DETHMERS, JJ., concurred.